UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| TAMBRA J., | | |
| | Plaintiff, | CASE NO. C19-6094-MAT |
| v. | | |
| ANDREW M. SAUL, | | ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |
| Commissioner of Social Security, | | |
| | Defendant. | |

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1968.[1] She has a 10th grade education and training in

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

flagging and biohazards, and has worked as a fast-food cashier and fish plant spooner. (AR 401-02.)

Plaintiff applied for SSI in April 2015. (AR 372-77.) That application was denied and Plaintiff timely requested a hearing. (AR 199-207, 214-23.)

In March and July 2017, and January and May 2018, ALJ Rebecca L. Jones held hearings, taking testimony from Plaintiff and vocational experts (VEs). (AR 38-75.) On September 27, 2018, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-37.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on September 18, 2019 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had worked since the application date, but this work did not rise to the level of substantial gainful activity. (AR 17-18.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's major depressive disorder, posttraumatic stress disorder, cocaine and amphetamine use disorder, and pancreatitis. (AR 18-21.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 21-22.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work, with additional limitations: she cannot climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She must avoid exposure to extreme cold, vibration, and hazards. She can perform simple, routine tasks (defined as no greater than a reasoning level of 2). She can have occasional superficial contact with co-workers and no direct public contact. (AR 22.)

Because Plaintiff has no past relevant work (AR 36), the ALJ moved on to step five, where the burden shifts to the Commissioner to demonstrate that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the help of VE testimony, the ALJ found Plaintiff capable of performing representative occupations such as production assembler, lab sample carrier, and cleaner/polisher. (AR 36-37.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) failing to account for certain physical limitations in the RFC assessment, (2) assessing the medical opinion evidence, (3) discounting lay statements, and (4) relying on VE testimony at step five that does not meet the Commissioner's burden to show

that the jobs identified exist in significant numbers. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

### Physical limitations

The ALJ found at step two that several of Plaintiff's medical conditions were not severe, either because they did not significantly impact Plaintiff's ability to perform work activities, or because they did not persist for the requisite twelve months. (AR 18-21.) Plaintiff argues that even if her gastrointestinal and knee conditions were not severe, the ALJ was required to account for the limitations caused by those conditions. Dkt. 12 at 13-14.

RFC is the most a claimant can do considering his or her limitations or restrictions. *See* SSR 96-8p. The ALJ must consider the limiting effects of all of plaintiff's impairments, including those that are not severe, in determining his RFC. 20 C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-8p.

The ALJ thoroughly discussed Plaintiff's allegations and treatment record related to her gastrointestinal and knee conditions, and explained that Plaintiff's knee problems were short-lived (AR 18-19) and that her gastrointestinal issues did not appear to cause more than minimal limitations (AR 20-21). Plaintiff's opening brief does not identify any error in the ALJ's discussion of the medical records pertaining to these conditions, and she does not address this issue in her reply brief. Dkt. 12 at 13-14; Dkt. 16. Plaintiff has failed to meet her burden to show that the ALJ harmfully erred in failing to account for limitations caused by Plaintiff's gastrointestinal or knee conditions.

### Lay evidence

The record contains statements written by Plaintiff's fiancé and roommates. (AR 501-02, 528-29, 531-32, 538.) The ALJ discounted these statements because the authors "are not medically

1 trained to make exacting observations as to dates, frequencies, types and degrees of medical signs
2 and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of
3 the statements in questionable." (AR 35.)  The ALJ went on to find the statements to be
4 inconsistent with the medical record and Plaintiff's self-reported activities. (*Id.*)  Specifically, the
5 ALJ noted that although the lay witnesses described Plaintiff as needing to use the bathroom
6 "upwards of 20 times a day," such a statement was not supported by the treatment records. (*Id.*)
7 Plaintiff argues that these reasons are not germane, as required in the Ninth Circuit. *See Dodrill*
8 *v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the
9 lay witnesses, he must give reasons that are germane to each witness.").

10    The Court agrees with Plaintiff that the ALJ's first reason is not germane. *See Diedrich v.*
11 *Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("The fact that lay testimony and third-party function
12 reports may offer a different perspective than medical records alone is precisely why such evidence
13 is valuable at a hearing.").

14    The ALJ's other reasons are germane, however. The ALJ found the lay statements to be
15 inconsistent with the medical record as well as Plaintiff's activities, and the ALJ identified specific
16 inconsistencies therein. (AR 35.) These findings distinguish this case from *Bruce v. Astrue*, where
17 the Ninth Circuit explained that a lack of support in the medical record for lay statements is not a
18 germane reason to discount lay statements. 557 F.3d 1113, 1116 (9th Cir. 2009). Here, the ALJ
19 did not indicate merely a lack of support, but an inconsistency between the lay statements and the
20 medical record and Plaintiff's activities. These are germane reasons to discount the lay statements.
21 *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Bayliss v.*
22 *Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).
23 / / /

Medical opinion evidence

Plaintiff assigns error to the ALJ's assessment of several medical opinions, each of which the Court will address in turn.

Legal standards

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).[2] Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Curtis G.G. Greenfield, Psy.D.

Dr. Greenfield examined Plaintiff three times, in 2014, 2015, and 2016, and each time he completed a DSHS form opinion describing Plaintiff's symptoms and limitations. (AR 692-96, 1692-96, 1700-04.) The ALJ provided reasons to discount Dr. Greenfield's 2014 and 2015 opinions, and summarized the 2016 opinion but did not weigh it. (AR 27, 28, 35.)

Plaintiff contends that the ALJ ignored the 2014 opinion, but this is not accurate. Dkt. 12 at 7. The ALJ noted that in the 2014 opinion, Dr. Greenfield rated Plaintiff's limitations to be at most "moderate," and the ALJ discounted Dr. Greenfield's 2014 opinion because it predated the application date. (AR 35.) Given that Plaintiff incorrectly asserts that the ALJ ignored the 2014

---

[2] Because Plaintiff filed disability applications before March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 and § 416.927 apply to the ALJ's consideration of medical opinions.

opinion, Plaintiff has not presented any argument establishing error in the ALJ's rationale with respect to the 2014 opinion, and therefore any assignment of error with respect to that opinion fails.

As to the 2015 opinion, the ALJ found that the moderate limitations described by Dr. Greenfield were consistent with the record, but the marked limitations were based on Plaintiff's unreliable self-reporting. (AR 33.) Given that the ALJ discounted Plaintiff's self-reporting, and Plaintiff does not challenge that finding, the ALJ was entitled to discount the parts of Dr. Greenfield's opinion that were based on self-reporting. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

But Plaintiff goes on to contend that "even the moderate limitations expressed by Dr. Greenfield are not contained in the RFC but which are very similar to the DDS findings expressed in their assessment[.]" Dkt. 12 at 7. To the extent that Plaintiff is arguing that the ALJ erred in failing to account for the moderate limitations identified by Dr. Greenfield in the 2015 opinion, she has not met her burden to show that the ALJ's RFC assessment is actually inconsistent with those opinions. The ALJ's RFC assessment includes significant cognitive and social limitations, which are reasonably consistent with the moderate limitations described in Dr. Greenfield's opinions. Moreover, because the ALJ's decision is also arguably consistent with the moderate limitations referenced in Dr. Greenfield's 2016 opinion, Plaintiff has not shown any harmful error

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 7

in the ALJ's failure to explicitly weigh that opinion.[3]

Plaintiff also suggests that the moderate limitations identified by Dr. Greenfield are consistent with the State agency opinions (Dkt. 12 at 7), which may be true, but this does not suggest error in the ALJ's decision, because the ALJ incorporated all of the limitations identified by the State agency consultants in the RFC assessment. (*Compare* AR 22 *with* AR 163-65, 177-79.)

Accordingly, the Court finds no harmful legal error in the ALJ's assessment of Dr. Greenfield's opinions.

R. Jo Renn, M.D.

Dr. Renn performed an intake evaluation of Plaintiff in April 2017 when she began treatment at Behavior Health Resources. (AR 1427-32.) Dr. Renn saw Plaintiff next in August 2017, when she completed a form opinion describing Plaintiff's conditions and mental limitations.[4] (AR 1461-64.)

The ALJ gave little weight to Dr. Renn's form opinion, noting that she did not have a longstanding treatment relationship with Plaintiff at the time the opinion was rendered. (AR 34.) The ALJ also contrasted the Global Assessment of Functioning (GAF) score that Dr. Renn assigned — 60, reflecting moderate symptoms or moderate difficulty in social, occupational, or

---

[3] Furthermore, Plaintiff mischaracterized the ALJ's discussion of the 2016 opinion in the decision. Although Plaintiff also asserts that the ALJ did not address Dr. Greenfield's 2016 opinion at all (Dkt. 12 at 7), the ALJ in fact summarized the content of the 2016 opinion in the decision. (AR 28.) The ALJ noted that Dr. Greenfield opined that Plaintiff had no more than moderate social and cognitive limitations at that time. (*Id*.)

[4] For the first time on reply, Plaintiff points to the discrepancy between the diagnoses listed by Dr. Renn and the conditions found severe by the ALJ at step two. Dkt. 16 at 8-9. Plaintiff has failed to make any showing that this discrepancy is material to the ALJ's ultimate decision, and did not challenge the ALJ's step-two findings on this basis.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 8

school functioning — with the severe restrictions she described, such as being off task 20% of a workday. (AR 34 (citing Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).) The ALJ found Dr. Renn's conclusions to be inconsistent with her treatment notes, the contemporaneous mental health notes, and the overall medical evidence of record, which shows that Plaintiff "consistently performs well during mental status examinations [(MSEs)] and is not limited in her activities of daily living." (AR 34.)

Plaintiff contends that the ALJ's reasons to discount Dr. Renn's opinion are not specific and legitimate. First, Plaintiff notes that although the ALJ found that Dr. Renn had only seen her once at the time the opinion was rendered, she actually had a second appointment on the day the opinion was written. Dkt. 12 at 11. This may be true, but it does not materially undermine the ALJ's finding that Dr. Renn's treatment relationship was limited at the time of the appointment, particularly because the ALJ also acknowledged the second appointment with Dr. Renn in another part of the decision. (AR 31.)

Plaintiff goes on to argue that Dr. Renn would have had access to Plaintiff's other treatment notes with other Behavioral Health Resources clinicians, and thus their treatment notes would have informed Dr. Renn's opinion. Dkt. 12 at 11-12. This is a speculative argument, because Dr. Renn did not indicate that she reviewed any additional records or refer to any findings that others had made. Plaintiff's speculation does not undermine the ALJ's finding that Dr. Renn had limited exposure to Plaintiff at the time the opinion was written.

Plaintiff next argues that the ALJ erred in finding Dr. Renn's opinion to be inconsistent with her own treatment notes, the contemporaneous mental health notes, and the overall medical evidence of record, because these "boilerplate" reasons are not sufficiently specific. Dkt. 12 at 12. Plaintiff overlooks that the ALJ explicitly referenced Plaintiff's performance on MSEs as well as

her robust daily activities as inconsistent with Dr. Renn's conclusions. (AR 34.) The ALJ's decision details the normal MSE findings at length (AR 27-30), and also cited various activities, such as visiting public places, using public transportation, attending group counseling sessions, and visiting a school campus, which are inconsistent with her alleged mental limitations. (AR 23, 30.) The ALJ's decision adequately explains why the ALJ found the record to be inconsistent with Dr. Renn's opinion.

Lastly, Plaintiff challenges the ALJ's finding that Dr. Renn's opinion is internally inconsistent with respect to the GAF score, contending that the ALJ "offers no evidence" to support the conclusion that the GAF score is inconsistent with the opinion. Dkt. 12 at 12. Plaintiff has not shown that the ALJ was unreasonable in finding Dr. Renn's off-task rating (which indicates an inability to maintain a job) to be inconsistent with a GAF score suggesting only moderate symptoms or moderate functional difficulties. Although Plaintiff suggests that the ALJ was not entitled to attempt to interpret the same data as Dr. Renn and yet render a different conclusion (Dkt. 16 at 9), the ALJ, albeit a layperson, is indeed tasked with considering whether medical opinions are internally inconsistent and/or inconsistent with the medical record. *See, e.g.*, *Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ appropriately considers internal inconsistencies within and between physicians' reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

Accordingly, because the Court finds that the ALJ provided specific, legitimate reasons to discount Dr. Renn's opinion, the Court affirms the ALJ's interpretation of this opinion.

<u>Mary Lemberg, M.D.</u>

Dr. Lemberg performed a consultative examination of Plaintiff in July 2015, and wrote a

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 10

narrative report describing Plaintiff's symptoms and limitations. (AR 884-91.) The ALJ summarized Dr. Lemberg's findings and assigned partial weight to much of Dr. Lemberg's opinion. (AR 33.) To the extent that Dr. Lemberg suggested that Plaintiff could have more severe limitations, such as in her ability to perform work on a consistent basis without interruption from her psychiatric conditions (AR 890), the ALJ found that these portions of Dr. Lemberg's opinion were based on Plaintiff's non-credible self-report and inconsistent with the record, which showed robust daily activities and "consistently normal" MSEs. (AR 33.)

Plaintiff argues that her activities do not demonstrate that she can work (Dkt. 12 at 8), but the ALJ did not cite Plaintiff's activities as evidence that she can work; the ALJ cited Plaintiff's activities as inconsistent with Dr. Lemberg's opinion, which is a reasonable interpretation. For example, the ALJ noted that Plaintiff was able to obtain and perform a job during the adjudicated period, and testified that the job ended due to physical problems rather than mental problems. (*See* AR 33, 88-89.) That Plaintiff could perform a job without problematic interruptions from her psychiatric symptoms reasonably undermines Dr. Lemberg's opposite conclusion. (AR 890.)

Plaintiff also contends that the ALJ overlooked the parts of Dr. Lemberg's MSE that were abnormal, such as her calculation and spelling problems, her inadequate fund of knowledge, and her short-term memory problems. Dkt. 12 at 9. Despite those deficits, Dr. Lemberg found Plaintiff capable of performing simple, repetitive tasks (AR 890), and the ALJ agreed with that conclusion. (AR 22.) Plaintiff has not shown that Dr. Lemberg's abnormal MSE findings correspond to more severe limitations that the ALJ overlooked, and thus Plaintiff has not shown that the ALJ unreasonably interpreted Dr. Lemberg's findings.

Because the inconsistencies identified by the ALJ amount to specific, legitimate reasons to discount Dr. Lemberg's opinion, the Court affirms the ALJ's assessment of Dr. Lemberg's

opinion.

Terilee Wingate, Ph.D.

Dr. Wingate examined Plaintiff in June 2017 and completed a DSHS form opinion describing her symptoms and limitations, and finding that Plaintiff had three marked limitations in her ability to perform basic work activities. (AR 1311-18.) The ALJ found the marked limitations to be based on Plaintiff's self-report, which the ALJ discounted. (AR 34.)

Plaintiff questions whether Dr. Wingate's evaluation was in fact based on Plaintiff's self-reporting, and also suggests that this reasoning would apply to every psychological opinion. Dkt. 12 at 10. But the "clinical findings" section of Dr. Wingate's opinion consists entirely of a record of Plaintiff's self-reports (AR 1312-13); given that the ALJ discounted Plaintiff's self-report (and identified a specific inaccuracy in Plaintiff's report to Dr. Wingate) and Plaintiff does not challenge that finding, the ALJ was entitled to discount opinions based on that self-reporting. *See Bray*, 554 F.3d at 1228. Accordingly, the Court affirms the ALJ's assessment of Dr. Wingate's opinion.

### Step five

The ALJ bears the burden at step five to provide evidence demonstrating that "other work exists in significant numbers in the national economy that [a claimant] can do, given [her RFC] and vocational factors." C.F.R. § 404.1560(c)(2). In so doing, "[a]n ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). "A VE's recognized expertise provides the necessary foundation for his or her testimony." *Id*.

In this case, the VE identified three representative jobs that Plaintiff could perform: production assembler, lab sample carrier, and cleaner/polisher. (AR 36-37.) The VE also testified

as to the job numbers available for those positions, but explained that the resource she was using to generate job numbers did not specify the job numbers by discrete job code per the Dictionary of Occupational Titles, but that the numbers she cited reflected a broader category of jobs that would nonetheless be consistent with the exertional level and the specific vocational preparation level referenced in the ALJ's hypothetical. (AR 147-51.) Plaintiff filed a post-hearing brief challenging the VE's testimony. (AR 556-671.)

Plaintiff argues that because the job numbers cited by the VE do not pertain to the job title identified by the VE and relied upon by the ALJ, the Commissioner did not satisfy the burden of proving the existence of specific jobs that Plaintiff can perform that exist in significant numbers. Dkt. 12 at 17-18. This argument has been rejected by other courts in this district. *See, e.g.*, *Houpt v. Berryhill*, 2018 WL 1062745, at *4 (W.D. Wash. Feb. 27, 2018), *amended on other grounds*, 2018 WL 3019002 (W.D. Wash. June 18, 2018); *Vandevoort v. Berryhill*, 2017 WL 413203, at *8 (W.D. Wash. Jan. 31, 2017). The Court agrees with the reasoning set forth in *Vandevoort*, that the VE's testimony regarding job numbers is consistent with the regulatory requirements because the VE's testimony shows that Plaintiff can perform work available in "one or more occupations" that exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical and mental abilities and vocational qualifications."). Accordingly, the Court finds that the ALJ did not err in relying on the VE's testimony at step five.

/ / /

/ / /

/ / /

**CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 7th day of July, 2020.

Mary Alice Theiler
United States Magistrate Judge